IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROHM AND HAAS COMPANY and** | : | |
| **MORTON INTERNATIONAL, INC.** | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **UTICA MUTUAL INSURANCE** | : | |
| **COMPANY,** | : | NO. 07-584 |
| Defendant. | : | |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                        JUNE 20, 2008

## INTRODUCTION

Plaintiffs Rohm and Haas Company and Morton International, Inc., a subsidiary of Rohm and Haas Company (collectively, "Rohm and Haas"), commenced this action against Utica Mutual Insurance Company ("Utica Mutual"), seeking a declaratory judgment that Utica Mutual has a duty to defend and indemnify Rohm and Haas with respect to lawsuits brought against Rohm and Haas by various individuals arising out of alleged exposure to contaminated air and groundwater from Morton International, Inc.'s Ringwood, Illinois manufacturing facility. Additionally, Rohm and Haas asserted breach of contract and bad faith claims against Utica Mutual, claiming, inter alia, that Utica Mutual had no reasonable basis to refuse to defend the underlying lawsuits, knew or recklessly disregarded the fact that it had no reasonable basis for denying its duty to defend, failed to "conduct a substantial, thorough and meaningful investigation" into Rohm and Haas's insurance claim, and "used the investigatory process as a pretense for obtaining information to use against [Rohm and Haas] in litigation." (Am. Comp. ¶¶

76-80.)[1]

Utica Mutual has moved to bifurcate discovery and trial relating to the bad faith claim (Count Five), pending the outcome of the duty to defend claims (Counts Two and Four). Utica Mutual argues that the bad faith claim should proceed separately later for reasons of judicial economy, to avoid undue prejudice and expense, and, Utica Mutual contends, because a ruling in its favor on the duty to defend claim necessarily will dispose of the bad faith claim. (Def.'s Mem. Support of Mot. to Bifurcate at 2-4.) In response, Rohm and Haas argues that the bad faith claim "does not necessarily depend on the duty to defend claim," that bifurcation would waste time and resources, and that Utica Mutual will not suffer prejudice from having the bad faith issue proceed with the duty to defend issue.[2] (Pl.'s Mem. Opp'n Motion to Bifurcate at 2-9.)

For the reasons discussed below, Utica Mutual's Motion to Bifurcate will be denied.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 42(b), the Court has discretion to bifurcate separate claims and issues "[f]or convenience, to avoid prejudice, or to expedite and economize."

---

[1] On September 26, 2007, the Court issued a Scheduling Order reflecting the parties' agreement to bifurcate discovery and trial, and ordering that discovery as to Count One (seeking declaration of corporate succession), Count Two (seeking declaration of duty to defend), Count Four (breach of contractual duty to defend claim), and Count Five (42 Pa. Cons. Stat. Ann. § 8371 bad faith claim) would proceed initially, while staying discovery relating to Count Three (seeking declaration of duty to indemnify) until a later date.

[2] Utica Mutual's Motion to Bifurcate, filed on May 7, 2008, did not explain why Utica Mutual did not previously attempt to bifurcate the bad faith claim. As Rohm and Haas points out in its Opposition Memorandum, nearly nine months passed between the Court's September 26, 2007 Scheduling Order, which separated discovery for the duty to indemnify claim (Count Three) from the other claims, and this Motion. (Pl.'s Mem. Opp'n at 10.)

Fed. R. Civ. P. 42(b).  Bifurcating a trial "is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978) (citing Idzojtic v. Penn. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1971)).  The moving party bears the burden of showing that bifurcation would "serve judicial economy, avoid inconvenience, and not prejudice any of the parties." AstenJohnson v. Columbia Cas. Co., No. 03-1552, 2006 WL 1791260, at *2 (E.D. Pa. June 22, 2006); see also  Zurich Ins. Co. v. Health Sys. Integration Inc., No. 97-4994, 1998 U.S. Dist. LEXIS 5927, at *7-9 (E.D. Pa. April 28, 1998); Nathanson v. Aetna Cas. & Sur. Co., No. 01-CV-3377, 2001 U.S. Dist. LEXIS 18248, at *4 (E.D. Pa. Nov. 7, 2001).

**DISCUSSION**

Section 8371 of Title 42 of the Pennsylvania Code, which concerns bad faith insurance practices, states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may . . . (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.  (2) Award punitive damages against the insurer.  (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.  The Court of Appeals for the Third Circuit has defined "bad faith" as "frivolous or unfounded refusal to pay, lack of investigation into the facts, *or* a failure to communicate with the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*,* 193 F.3d 742, 751 n.9 (3d Cir. 1999) (emphasis added).  To prove a Section 8371 bad faith claim, a plaintiff must show "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." Gallatin Fuels,

3

Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 433-34 (3d Cir. 2007) (non-precedential) (citing Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. Ct. 2000)).

Previously, the court of appeals has stated that "absent a predicate action to enforce some right under an insurance policy, an insured may not sue an insurer for bad faith conduct in the abstract," indicating that bringing a Section 8371 bad faith claim requires a predicate action arising under an insurance policy. Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 530 (3d Cir. 1997).[3]  Hence, a bad faith claim based solely on an underlying contractual claim generally will fail if a court or jury determines that the insurer did not have a duty defend. See USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 202 (3d Cir. 2006) (affirming summary judgment on insured's bad faith claim in favor of insurer because the bad faith claim "necessarily fails" because there was no coverage under the policy); see also Frog, Switch, 193 F.3d at 751 n.9 (affirming district court's reasoning that "bad faith claims cannot survive a determination that there was no duty to defend"); Still v. Great N. Ins. Co., 254 F. App'x 125, 128 n.3 (3d Cir. 2007) (per curiam) (non-precedential) (affirming dismissal of bad faith claim because the insured's malicious prosecution insurance claims were not covered under insurer's policy due to a "business pursuits" exclusion).

---

[3] Polselli provides an in-depth discussion of whether a Section 8371 bad faith claim is an independent cause of action from the contractual claim. 126 F.3d at 529-30. While ultimately holding that attorney's fees incurred litigating a Section 8371 bad faith claim are recoverable by an insured under Section 8371, the court stated that the statutory language of Section 8371 makes it clear that a bad faith claim cannot "exist in a vacuum" and instead provides "additional remedies upon a finding of bad faith made in a predicate action under an insurance policy." Id. at 530.  The Polselli court further stated that "at the very least . . . the predicate policy cause of action must be ripe before a Section 8371 cause of action may be recognized," indicating that a bad faith claim can be brought as long as a predicate policy cause of action is also brought. Id. (citing Doylestown Elec. Supply Co. v. Md. Cas. Ins. Co., 942 F. Supp. 1018, 1019-20 (E.D. Pa. 1996)) (emphasis added).

However, our court of appeals has also stated that "the concept of 'bad faith'" can extend "beyond an insured's denial of a claim in several limited areas." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (citations omitted) (affirming summary judgment for insurer on insured's bad faith claim after holding that insured's omissions on her insurance application constituted bad faith as a matter of law). Indeed, there are exceptions where the court of appeals has viewed an insured's bad faith claim as independent from the insured's contractual claim based on the underlying insurance policy. For example, a bad faith claim may be independent of, and not contingent upon, the underlying contractual claim when (1) the underlying insurance claim has been settled, see Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co., 399 F.3d 224, 235 (3d Cir. 2005) (affirming a punitive damage award for a bad faith claim for "unreasonable delays" because, even though the insurance claim had been settled and paid, "Section 8371 allows punitive damages awards even in the absence of other successful claims brought by the plaintiff"); (2) the underlying insurance claim is barred by the statute of limitations, see Frog, Switch, 193 F.3d at 751 n.9 (holding that where the statute of limitations had expired rendering the breach of a duty to defend claim unredressable "it was still possible that a bad faith claim could succeed"); and, most relevant to Rohm and Haas's bad faith claim here, (3) when the plaintiff's bad faith claim is based on more or other than just the insurance company's refusal to provide coverage, see Gallatin Fuels, 244 F. App'x at 434-35 ("[A] finding that the [insurer] did not ultimately have a duty to cover the plaintiff's claim does not per se make the [insurer's] actions reasonable." (emphasis added)).[4]

---

[4] While both parties cited Gallatin Fuels in their briefs, neither party disclosed that the case is non-precedential. In fact, Rohm and Haas stated that "Gallatin Fuels controls this case." (Pl.'s Mem. Opp'n at 5 n.1.) Under the circumstances, while the case is informative, to say that

5

Indeed, under certain circumstances, district courts have refused to dismiss bad faith claims or sever them from the underlying contractual claim at the pre-trial stage. See Moss Signs, Inc. v. State Auto. Mut. Ins. Co., No. 08-164, 2008 U.S. Dist. LEXIS 26770, at *12-13 (W.D. Pa. April 2, 2008) (applying Gallatin Fuels to deny insurer's motion to dismiss insured's bad faith claims because the bad faith claims went beyond insurer's refusal to cover property damage); see also Frederick & Emily's Inc. v. Westfield Group, No. 03-CV-6589, 2004 U.S. Dist. LEXIS 17274, at *7-8 (E.D. Pa. Aug. 25, 2004) (denying insurer's motion to sever the bad faith claim from the breach of contract claim because "trial on the bad faith claim might very well proceed regardless of the outcome of the breach of contract litigation"); but see AstenJohnson, 2006 WL 1791260 at *3 (granting insurer's motion to bifurcate the bad faith claim, finding that "if plaintiff is not ultimately successful on its claim for declaratory judgment, there will be no need for evidence to be introduced on the bad faith claim").[5]

In Gallatin Fuels, because both the insurer and the insured mistakenly believed that the insurance policy existed at the time of the insurance claim, the insurer did not assert that the policy had been cancelled until six months after the insured made its claim. 244 F. App'x at 427-28. Ultimately, the court of appeals affirmed the jury's finding that the insurer acted in bad faith even though the court also found that, as a matter of law, the policy had been cancelled before the loss occurred. Id. at 433-35. The Gallatin Fuels court distinguished the facts of that case from Frog, Switch because, in Gallatin Fuels, the insured's bad faith claim was "based largely on

---

it is "controlling" is at least an intemperate overstatement.

[5] However, as Rohm and Haas points out, one of the main reasons in that case that the court granted the motion to bifurcate was to avoid prejudice during trial to a second insurer at which the bad faith claim was not directed. AstenJohnson, 2006 WL 1791260 at *3.

Indeed, under certain circumstances, district courts have refused to dismiss bad faith claims or sever them from the underlying contractual claim at the pre-trial stage. See Moss Signs, Inc. v. State Auto. Mut. Ins. Co., No. 08-164, 2008 U.S. Dist. LEXIS 26770, at *12-13 (W.D. Pa. April 2, 2008) (applying Gallatin Fuels to deny insurer's motion to dismiss insured's bad faith claims because the bad faith claims went beyond insurer's refusal to cover property damage); see also Frederick & Emily's Inc. v. Westfield Group, No. 03-CV-6589, 2004 U.S. Dist. LEXIS 17274, at *7-8 (E.D. Pa. Aug. 25, 2004) (denying insurer's motion to sever the bad faith claim from the breach of contract claim because "trial on the bad faith claim might very well proceed regardless of the outcome of the breach of contract litigation"); but see AstenJohnson, 2006 WL 1791260 at *3 (granting insurer's motion to bifurcate the bad faith claim, finding that "if plaintiff is not ultimately successful on its claim for declaratory judgment, there will be no need for evidence to be introduced on the bad faith claim").[5]

In Gallatin Fuels, because both the insurer and the insured mistakenly believed that the insurance policy existed at the time of the insurance claim, the insurer did not assert that the policy had been cancelled until six months after the insured made its claim. 244 F. App'x at 427-28. Ultimately, the court of appeals affirmed the jury's finding that the insurer acted in bad faith even though the court also found that, as a matter of law, the policy had been cancelled before the loss occurred. Id. at 433-35. The Gallatin Fuels court distinguished the facts of that case from Frog, Switch because, in Gallatin Fuels, the insured's bad faith claim was "based largely on

---

it is "controlling" is at least an intemperate overstatement.

[5] However, as Rohm and Haas points out, one of the main reasons in that case that the court granted the motion to bifurcate was to avoid prejudice during trial to a second insurer at which the bad faith claim was not directed. AstenJohnson, 2006 WL 1791260 at *3.

behavior beyond [the insurer's] denial of the claim," whereas in Frog, Switch, the "sole basis for the bad faith claim . . . was the refusal to provide coverage." Gallatin Fuels, 244 F. App'x at 434-35.

In this case, Utica Mutual argues that Rohm and Haas's bad faith claim must fail if Plaintiffs are not successful on the underlying duty to defend claim. While the court of appeals' decisions are certainly consistent with Utica Mutual's basic arguments on this point, in cases in which the court held that the bad faith claims were dependant on the underlying contractual claim, the court made this determination after concluding that the underlying contractual claim had failed. See USX Corp., 444 F.3d at 202 (reversing the lower court's summary judgment ruling, holding that the insured's underlying injury claims were not covered by the policy, and thus the bad faith claim failed); see also Frog, Switch, 193 F.3d at 751 ("reject[ing] in the margin" plaintiff's bad faith claim after affirming lower court's dismissal of breach of contract claim because the insurance policy did not cover the underlying contract claim). In contrast, in this case, discovery is currently underway with respect to the duty to defend and bad faith claims, and there has not yet been a determination of the merits of the duty to defend claim. Moreover, the merits of the bad faith claim have not been briefed and are not actually at issue in this motion.

Based on the Gallatin Fuels line of cases, which allow for a Section 8371 bad faith claim to proceed even absent an underlying duty to defend, there is at least the possibility that Rohm and Haas's bad faith claim could exist independent of its duty to defend claim. See Gallatin Fuels, 24 F. App'x at 434-35; see also Moss Signs, Inc., 2008 U.S. Dist. LEXIS 26770 at *12-13; Frederick & Emily's Inc., 2004 U.S. Dist. LEXIS 17274 at *7-8. Rohm and Haas bases its bad faith claim on more than Utica Mutual's failure to defend, as, among other things, Rohm and

Haas also claims that Utica Mutual acted in bad faith by failing to investigate the insurance claim and by requesting information "under the guise of claim investigation" while really attempting to "obtain a head start in litigation discovery." (Pl.'s Mem. Opp'n at 3; Am. Comp. ¶¶ 40, 44, 80.)

Exercising its discretion on this issue, the Court concludes that bifurcation of Rohm and Haas's bad faith claim from the underlying contractual claim would not necessarily be more convenient, expeditious, or economical,[6] because it is <u>possible</u> that a trial on the bad faith claim would proceed regardless of the outcome of the duty to defend claim.  See Frederick & Emily's Inc., 2004 U.S. Dist. LEXIS 17274 at *7-8.  It is likely that discovery on the duty to defend and bad faith claims will concern much of the same or related evidence and will involve deposing many of the same individuals about events that occurred in the same or reasonably close time period.  Trying both claims together could be more orderly and efficient under all the pertinent circumstances, and, therefore, separating potentially overlapping discovery and trials, either or both of which might proceed independently, would be the "opposite of 'expeditious resolution of the litigation.'"  Id.  In addition, Utica Mutual has not shown that there would be any meaningful savings of time, money or effort by bifurcation.  Indeed, the risk of prejudice to Utica Mutual by not bifurcating the issues at this time is unclear.  Given the fervent arguments advanced by Utica Mutual, by having the claims proceed through pretrial procedures Utica Mutual can more efficiently determine whether the fruits of discovery will allow it to address the issues in a single dispositive motion at an earlier point in the litigation.

---

[6] This ruling should not be used to attempt to justify unrestrained or expansive discovery which the Court will continue to oversee as needed.

**CONCLUSION**

Although Section 8371 bad faith claims generally require a predicate contractual claim, it is possible that a bad faith claim that includes allegations beyond or other than the insurer's denial of coverage for the claim or of a duty to defend, such as the claim asserted by Rohm and Haas here, can proceed independently from the duty to defend claim.  Utica Mutual has not demonstrated that bifurcation of the duty to defend claim and the bad faith claim would promote judicial economy, or avert undue prejudice or expense.  Accordingly, Utica Mutual's Motion to Bifurcate is denied.

An Order consistent with this Memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROHM AND HAAS COMPANY and** | : | |
| **MORTON INTERNATIONAL, INC.** | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **UTICA MUTUAL INSURANCE** | : | |
| **COMPANY,** | : | NO. 07-584 |
| Defendant. | : | |

**O R D E R**

**AND NOW**, this 20th day of June, 2008, upon consideration of Defendant Utica Mutual Insurance Company's Motion to Bifurcate (Docket No. 50), Rohm and Haas Company's and Morton International, Inc.'s Response in Opposition thereto (Docket No. 54), and Utica Mutual Insurance Company's Reply Brief (Docket No. 63), for the reasons discussed in the accompanying Memorandum, **IT IS ORDERED** that Utica Mutual Insurance Company's Motion to Bifurcate (Docket No. 50) is **DENIED**.

BY THE COURT:


S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE